IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICHARD N. ABRAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-2242-L |
| | § | |
| UNITED STATES OF AMERICA | § | |
| DEPARTMENT OF THE TREASURY | § | |
| OFFICE OF THE COMPTROLLER OF | § | |
| THE CURRENCY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard N. Abrams ("Plaintiff") filed a Motion for Order to Quash Administrative Subpoena ("Motion") issued by the Office of the Comptroller of the Currency ("OCC" or "Government"). Pursuant to 28 U.S.C. § 636(b) and an order of the court in implementation thereof, Plaintiff's Motion, filed on November 14, 2005, was referred to the United States Magistrate Judge for hearing, if necessary, and determination.

As the magistrate judge states in his order, Plaintiff seeks to quash a subpoena *duces tecum* served on Surety Bank, Fort Worth, Texas, on November 2, 2005, to produce Plaintiff's account records and related wire transfer documents. Plaintiff argues that the records sought by the subpoena are protected from disclosure under the Right to Financial Privacy Act of 1978 ("RFPA"), 12 U.S.C. §§ 3401, *et seq.*, and that the Government is barred from obtaining the records, since it has failed to qualify for the exemption provided at 12 U.S.C. § 3402(2) from the general prohibition against Government access to customer records maintained by financial institutions.

**Memorandum Opinion and Order - Page 1**

The magistrate judge issued an order, filed December 16, 2005, denying Plaintiff's Motion on its merits. The magistrate judge found, pursuant to 12 U.S.C. § 3410(c), that a "demonstrable reason [exists] to believe that the law enforcement inquiry is legitimate and a reasonable belief [exists] that the records sought are relevant to that inquiry . . . . [and] that the Government has substantially complied with the RFPA." Mag. Judge's Order at 6. In response, Plaintiff filed his Objections to Decision and Disposition Order of U.S. Magistrate Judge Denying Plaintiff's Motion to Quash OCC Subpoena ("Objections"); the Government filed a Response in Opposition to Plaintiff's Objections; and Plaintiff filed a Reply to the Government's Response. The court now conducts a *de novo* review of Plaintiff's objections pursuant to Fed. R. Civ. P. 72(b).

Plaintiff objects to the finding that the OCC's investigation is a legitimate law enforcement inquiry within the meaning of RFPA. He contends that the OCC's power to conduct an investigative inquiry and issue regulatory enforcement sanctions under 12 U.S.C. §§ 1818 and 1820(c) is not the legal equivalent of a legitimate "law enforcement inquiry" as required by 12 U.S.C. § 3405(1), and defined at 12 U.S.C. § 3401(8).[1] Pl's Br. in Supp. of Objs. at 9. In other words, Plaintiff argues that the Government's reliance upon the broad investigative and enforcement powers vested with the OCC pursuant to 12 USC §§ 1818 and 1820(c) is not enough to show a legitimate law enforcement inquiry or that the records specified in the subpoena are relevant to such inquiry. He asserts that the OCC does not seek the subpoenaed records to determine whether Plaintiff violated "any criminal or civil statute or any regulation, rule, or order issued pursuant thereto," 12 U.S.C. § 3401(8), but seeks them only for the purpose of determining whether Plaintiff breached a fiduciary duty, or

---

[1] The RFPA defines "law enforcement inquiry" as "a lawful investigation or official proceeding inquiring into a violation of, or a failure to comply with, any criminal or civil statute or any regulation, rule or order issued pursuant thereto." 12 U.S.C. § 3401(8).

**Memorandum Opinion and Order - Page 2**

engaged in an unsafe or unsound practice for which sanctions or penalties could be imposed under 12 U.S.C. § 1818. The court must now determine whether the magistrate judge correctly concluded that there is reason to believe that the Government's investigation is a legitimate law enforcement inquiry pursuant to section 3405(1).

Upon conducting a *de novo* review of the objections, the court determines that the OCC's administrative subpoena issued pursuant to its statutory authority, 12 U.S.C. §§ 1818, 1820(c), under the facts presented, necessarily qualifies as a "legitimate law enforcement inquiry" for RFPA purposes. *See* 12 U.S.C. §§ 3405(1); 3410(c). There is reason to believe that the OCC, by conducting an authorized agency investigation of Abrams and other institution-affiliated parties to determine whether these individuals violated applicable laws, breached their fiduciary duties to the Bank, and engaged in unsafe or unsound practices, is engaging in a legitimate law enforcement inquiry within the meaning of RFPA. *Cf. Sandsend Fin. Consultants, Ltd. v. Federal Home Loan Bank Bd.*, 878 F.2d 875, 881 (5th Cir. 1989).[2]

In *Sandsend*, it was undisputed that the investigation by the Federal Home Loan Bank Board (the "FHLBB") concerning the use and application of the proceeds of bank loans was a legitimate law enforcement inquiry. *See Sandsend Fin. Consultants*, 878 F.2d at 878. Although the court did not directly discuss the legitimate law enforcement inquiry issue, it explained that the FHLBB issued a subpoena for a bank customer's financial records "[h]oping to learn more about the suspect loan

---

[2]In *Sandsend,* the court reversed a district court's order quashing an administrative subpoena issued by the FHLBB upon a corporate customer of Vision Banc Savings and Loan; the subpoena sought financial records relating to possible violations by Vision Banc. The investigation targeted Vision Banc, and focused upon several suspicious transactions suggesting a scheme to misuse the proceeds derived from Vision Banc loans or to otherwise defraud Vision Banc. *See Sandsend*, 878 F.2d at 877.

**Memorandum Opinion and Order - Page 3**

transaction . . . ." *Id*. at 877. The court further stated:

> The FHLBB suspects that [plaintiff] was part of a scheme to defraud Vision Banc or to misuse Vision Banc's funds. The FHLBB is attempting to trace Vision Banc's loan and account for the use of the funds. We find nothing unusual or improper in this type of investigation."

*Id*. at 881. The investigation in this case is sufficiently similar to the investigation in *Sandsend* to be considered a legitimate law enforcement inquiry. The OCC stated that it is "actively investigating whether current and former insiders of the Bank, including Abrams, have violated applicable laws and regulations, engaged in unsafe or unsound practices, and/or breached their fiduciary duty to the Bank." Govt's Resp. in Opp. to Mot. to Quash at 9-10. Moreover, the subpoena at issue contains language stating, "[t]he OCC's principal purpose in soliciting the information is to gather facts to determine whether any individual or bank is engaging, has engaged, or is about to engage in *violations of law or regulation* or unsafe and unsound banking practices . . . ." App. to Pl's Opening Br. in Supp. of Objs (Pl's App.) 4 (emphasis added).

The similar exercise of statutory authority, including subpoena power, used by the FHLBB in *Sandsend* and the OCC in this case, supports a determination that the OCC's investigation is a legitimate law enforcement inquiry. The court in *Sandsend* explained that Congress modeled the FHLBB's investigative authority, found at 12 U.S.C. § 1730, upon the authority vested in national bank examiners found at 12 U.S.C. § 1820(c). *Id*. at 879 (noting section 1820(c) "contains language identical to the language in Section 1730.").[3] As the inquiry in *Sandsend* was undisputedly a legitimate law enforcement inquiry, the investigations in *Sandsend* and this case are similar, and the FHLBB issued its administrative subpoena under a grant of authority modeled after the authority

---

[3]Congress repealed 12 U.S.C. § 1730 when it abolished the FHLBB. *See* Pub. L. No. 101-73 § 401 (1989).

**Memorandum Opinion and Order - Page 4**

by which the OCC issued the instant subpoena, *Sandsend* provides sufficient support for a determination that the OCC's investigation in the present case is a legitimate law enforcement inquiry. *See also Rodriguez v. Federal Sav. & Loan Ins. Corp.*, 712 F.Supp. 159, 162 (N.D. Cal. 1989) (holding an administrative subpoena arose in the course of a legitimate law enforcement inquiry because the "[Federal Savings and Loan Corporation] is empowered by statute to determine whether entities it regulates comply with applicable law through use of certain enforcement powers including the issuance of . . . subpoenas *duces tecum*. 12 U.S.C. §§ 1730g, 1730a."). Accordingly, the court agrees with the decision of the magistrate judge that the OCC's investigation is a legitimate law enforcement inquiry within the meaning of RFPA.

Plaintiff asserts that the OCC's investigation does not satisfy section 3405(1) of RFPA because the OCC has never characterized any conduct pertaining to the subpoenaed records as a suspected or possible violation of any criminal or civil statute, or concomitant regulation or rule, and seeks the records merely to investigate whether Plaintiff breached a fiduciary duty, or engaged in an unsafe or unsound practice. The court disagrees for several reasons.

First, the court agrees with the magistrate judge that Plaintiff interprets too narrowly the definition of "law enforcement inquiry," as defined at 12 U.S.C. § 3401(8). "[A]n administrative agency's power to issue subpoenas as it performs its investigatory function is a broad-ranging one which courts are reluctant to trammel." *Sandsend Fin. Consultants*, 878 F.2d at 878. The Supreme Court has prescribed an agency's power:

> [An agency] has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. When investigative and accusatory duties are

**Memorandum Opinion and Order - Page 5**

>delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law.

*United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950); *see also Sandsend Fin. Consultants*, 878 F.2d at 878.

Plaintiff acknowledges that the OCC's subpoena was issued in furtherance of an Order of Investigation, pursuant to sections 8(n) and 10(c) of the Federal Deposit Insurance Act, 12 U.S.C. §§ 1818(n) and 1820(c), for the purpose of obtaining evidence to determine whether the Bank, or any of its officers or affiliates, including Abrams, breached a fiduciary duty, committed an unsafe or unsound practice, or violated an applicable law, rule, or regulation subject to the OCC's enforcement authority. *See* Pl's Reply to Def's Resp. in Opp. to Pl's Objs. ("Pl's Reply") at 3. In light of the Order of Investigation, the *Sandsend* decision, and the plain language of the subpoena at issue, Plaintiff's position that section 3405(1) has not been satisfied undervalues the investigatory function of an administrative subpoena. By issuing the subpoena at issue, the OCC has acted within its "power of inquisition," and may investigate Abrams "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Morton Salt Co.*, 338 U.S. at 642-43; *Sandsend*, 878 F.2d at 878. Because the OCC's investigation is of the type it is authorized to make, and the record is devoid of evidence suggesting that it is being conducted "solely for an improper purpose such as political harassment or intimidation or otherwise in bad faith," the investigation is legitimate. *See Pennington v. Donovan*, 574 F.Supp. 708, 709 (S.D. Tex. 1983).

Second, insofar as Plaintiff asserts that the OCC seeks the subpoenaed records solely to ascertain whether he breached a fiduciary duty or committed an unsafe or unsound practice, Plaintiff ignores the Order of Investigation, statements contained in correspondence sent by the OCC to

Abrams, and the plain language of the subpoena at issue. *See* Pl's App. 4; 11-14.[4] Moreover, in its briefing, the OCC listed numerous laws to which it contends the subpoenaed records may pertain and that Abrams could have violated through his alleged conduct.[5] The OCC contends that its investigatory power under 12 U.S.C. §§ 1818 and 1820(c) includes the power to investigate potential breaches of fiduciary duties and engagements in unsafe or unsound practices, as well as for violations of applicable laws, and therefore an investigation made pursuant to such authority is a legitimate law enforcement inquiry. The magistrate judge, citing *Sandsend* and *Rodriguez*, determined that "the Government's investigation *in this case* is a legitimate law enforcement inquiry within the meaning of RFPA." Mag. Judge's Order at 4 (emphasis added). The court also makes it unequivocally clear that the magistrate judge's findings and conclusions are limited to the facts presented, and that the court is not interpreting the findings and conclusions as broadly as the Government would like.

Finally, Plaintiff's assertion that "[t]here is nothing in the OCC Subpoena [or] the OCC Order of Investigation . . . that indicates the agency is investigating a suspected violation of a statute, rule or regulation within the agency's jurisdiction," *see* Pl's Reply at 6, effectively imposes a requirement on the OCC to notify Abrams concerning the specific laws he has allegedly violated

---

[4]For example, a correspondence from the OCC to Abrams, dated October 13, 2004, stated, "Any civil money penalty action would be based upon the OCC's determination that, as Chairman and Chief Executive Officer of Surety Bank . . . you committed *violations of law or regulation*, violated a final order . . . breached your fiduciary duties, and/or engaged in unsafe or unsound practices." Pl's App. 11 (emphasis added).

[5]According to the OCC, the waiver of wire transfer transaction fees "may involve violations of, or failure to comply with, among other things," 18 U.S.C. § 656 (theft, embezzlement, or misapplication by bank officer or employee) and 18 U.S.C. § 1344 (bank fraud). *See* Govt's Resp. at 15.

**Memorandum Opinion and Order - Page 7**

before it may obtain the subpoenaed records.[6]  Charging requirements are not applicable in the investigatory stage of a proceeding.  *Tullier v. United States Dep't of Def.*, SA04CA1113XR, 2005 WL 1593393, at * 2 (W.D. Tex. June 24, 2005).  The purpose of an administrative investigation "is to discover and procure evidence, not to prove a pending charge or complaint, but upon which to make one if, in the Administrator's judgment, the facts thus discovered should justify doing so." *Genuine Parts Co. v. FTC*, 445 F.2d 1382, 1388 (5th Cir. 1971) (quoting *Oklahoma Press Publ'g Co. v. Walling*, 327 U.S. 186, 201 (1946)).

As Plaintiff made *de minimis* objections to the magistrate judge's findings that the records subpoenaed by the OCC are relevant to its investigation, and that the OCC has substantially complied with the RFPA, the court will briefly address these matters.  "For purposes of an administrative subpoena, the notion of relevancy is a broad one." *Sandsend*, 878 F.2d at 882.  The court agrees with the magistrate judge that the records sought by the subpoena at issue touch on a matter under investigation and are therefore relevant to the Government's legitimate law enforcement inquiry.  *See id*.  The court also agrees with the magistrate judge that the OCC substantially complied with RFPA.  Plaintiff was fully aware, and had actual notice, of the nature of the Government's law enforcement inquiry.

Having reviewed the objections, response, briefs of the parties, reply, appendices, record, and applicable law, the court determines the magistrate's findings and conclusions are correct. Accordingly, the court **affirms** the decision of the magistrate judge, and **overrules** Plaintiff's

---

[6]Likewise, Plaintiff's complaint that the OCC has failed to specify a "federal or state statute, rule, or regulation administered and enforced by the OCC [which] imposes any requirement or limitation that could have been violated . . ." equates to a demand for a charging requirement.  *See* Pl's Reply in Opp. to Mot. to Quash at 2.

**Memorandum Opinion and Order - Page 8**

Objections. The court therefore **orders** Surety Bank, Fort Worth, Texas to **comply** with the Office of Comptroller of the Currency's Subpoena Duces Tecum as issued on November 2, 2005.

**It is so ordered** this 3rd day of August, 2006.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge